# United States District Court
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| MALCOLM HOLCOMBE § <br> § <br> v. § <br> § <br> ADVANCED INTEGRATION § <br> TECHNOLOGY AND ADVANCED § <br> INTEGRATED TOOLING § <br> SOLUTIONS, LLC § | Civil Action No. 4:17-CV-00522 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Advanced Integration Technology's ("AIT") Motion to Transfer Venue (Dkt. #3). After reviewing the relevant pleadings and motion, the Court finds that the motion should be denied.

## BACKGROUND

This is a case about AIT's termination of Plaintiff Malcolm Holcombe ("Holcombe"). Specifically, Holcombe alleges that AIT fired him because of his age. AIT is a for-profit corporation headquartered in Plano, Texas, with over 900 employees worldwide. AIT can be served with process through its CEO Ed Chalupa ("Chalupa")—its registered agent for service—in Plano, Texas. AIT also has facilities in Grand Prairie, Texas; San Antonio, Texas; Bethell, Washington; Chesterfield, Michigan; Langley, British Columbia, Canada; Leganes, Spain; and Umea, Sweden.

Holcombe alleges that Chalupa recruited him and AIT hired him to work at AIT's facility in Chesterfield, Michigan—Advanced Integrated Tooling Solutions, LLC ("AIT-MI")—as Director of Manufacturing Operations on August 12, 2013 (Dkt. #8 at p. 4). Holcombe claims that AIT hired him as Director of Manufacturing Operations for manufacturing facilities of AIT, not just of AIT-MI (Dkt. #8 at p. 4).

While AIT and AIT-MI are separate legal entities, Holcombe alleges that they are one company from an operational standpoint (Dkt. #8 at p. 7). Holcombe contends that the two companies share common personnel, human resources departments, and centralized control at AIT's corporate headquarters in Plano, Texas.

On March 30, 2016, Michael Wellham ("Wellham")—AIT's Vice President of Automation and Tooling—allegedly emailed an employee termination list of thirty-two employees to Sarah Geiser ("Geiser")—Director of Human Resources for AIT-MI—and Steve Schifflebine ("Schifflebine")—Production Manager of AIT-MI. Wellham purportedly sent courtesy copies to Ken LaGrandeur ("LaGrandeur")—AIT-MI's Director of Business Development—and Holcombe. Wellham allegedly said that he wanted to finalize the list and begin layoffs when he got to AIT-MI.

On March 31, 2016, Geiser purportedly emailed a new employee termination list of thirty-three employees to Wellham, LaGrandeur, Holcombe, and Corporate Chief of Security Kory Keller ("Keller"). In a meeting later that day, Wellham allegedly asked Geiser, LaGrandeur, and Holcombe about the ages of the employees on the original termination list of thirty-two employees. Holcombe alleges that Wellham asked about the ages to avoid "an age discrimination problem." (Dkt. #14 at p. 4).

Holcombe claims that Wellham emailed a "draft 'Final Org Structure'" to Bill Pallante[1] ("Pallante"), AIT-MI's Vice President and General Manager, Geiser, and Erica Moreno ("Moreno"), AIT's Vice President of HR, on April 5, 2016 (Dkt. #14 at 4). The draft allegedly showed that Holcombe was no longer responsible in any way for human resources activities.

---

[1] Holcombe does not clearly explain the circumstances of Pallante's employment. Holcombe's pleadings state that Pallante received an email of a "draft 'Final Org Structure'" from Wellham on April 5, 2016 (Dkt. #14 at p. 4). Holcombe, however, pleads that "AIT and/or [AIT-MI]" announced on May 9, 2016 that Pallante was joining AIT-MI, and Pallante would report to Wellham on May 16, 2016.

Between April and August of 2016, Holcombe alleges that AIT/AIT-MI continued to reduce Holcombe's job responsibilities. On August 12, 2016, Pallante and Geiser purportedly met with Holcombe to tell him that AIT had eliminated his position and was terminating him.

On July 27, 2017, Holcombe sued AIT for age discrimination (Dkt. #1 at pp. 7–8). On September 26, 2017, AIT filed a motion to transfer venue (Dkt. #3). On October 18, 2017, Holcombe responded (Dkt. #8). On October 24, 2017, AIT filed its reply (Dkt. #9). On December 28, 2017, Holcombe filed an amended complaint, adding AIT-MI as a defendant (Dkt. #14).[2]

## LEGAL STANDARD

A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The threshold inquiry when determining eligibility for transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed," or whether all parties have consented to a particular jurisdiction. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold inquiry is met, the Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S.*

---

[2] Due to Holcombe's later addition of AIT-MI as a defendant (Dkt. #14), AIT alone filed the Motion to Transfer Venue and the subsequent briefing in support (Dkt. #3; Dkt. #9). In turn, this Order's analysis considers arguments made by AIT in support of its Motion to Transfer Venue (Dkt. #3).

3

*Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id.* The party seeking transfer of venue must show good cause for the transfer. *Id.* The moving party must show that the transferee venue is "clearly more convenient" than the transferor venue. *Id.*

## ANALYSIS

The parties do not dispute that this case could have been filed in either the Eastern District of Michigan or in the Eastern District of Texas (Dkt. #3 at p. 3; Dkt. #8 at p. 2). Defendants argue, however, that the Eastern District of Michigan's Courthouse in Detroit, Michigan, (the "Eastern District of Michigan, Detroit Courthouse") is a more convenient venue for this litigation than the Eastern District of Texas's Courthouse in Sherman, Texas, (the "Eastern District of Texas, Sherman Courthouse"). Thus, the Court must review the private and public interest factors concerning convenience of a motion to transfer venue. *Volkswagen II*, 545 F.3d at 315.

## I. The Private Interest Factors

### A. The Relative Ease of Access to Sources of Proof

The Court inquires whether transfer aids the relative ease of access to sources of proof. "[T]he location of documents is given little weight in determining proper venue unless the documents 'are so voluminous [that] their transport is a major undertaking.'" *Barnes & Noble Booksellers, Inc. v. DDR DB SA Ventures, LP*, No. SA05CA0002XR, 2005 WL 1279192, at *2 (W.D. Tex. May 5, 2005) (quoting *Gardipee v. Petrol. Helicopters, Inc.*, 49 F. Supp. 2d 925, 931 (E.D. Tex. 1999)). AIT argues that the germane documentary evidence is in the Eastern District of Michigan at AIT-MI.[3] Holcombe counters that "most, (if not all) documentary proof in an [Age Discrimination in Employment Act of 1967] case" is electronic and can be easily transmitted to the Eastern District of Texas.[4] (Dkt. #8 at p. 9). The documentary evidence in this case is readily portable. Thus, this factor is neutral in the venue analysis.

### B. The Availability of Compulsory Process

The Court next asks whether transfer benefits the availability of compulsory process. A court's subpoena may command a person to attend a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." FED. R. CIV. P. 45(c).

---

[3] AIT made several other arguments that are irrelevant to this section of the analysis, including that Holcombe does not reside in the Eastern District of Michigan or in the Eastern District of Texas; Holcombe lives closer to the Eastern District of Michigan, Detroit Courthouse, than to the Eastern District of Texas, Sherman Courthouse; the distance between AIT-MI and the Eastern District of Michigan, Detroit Courthouse, is 35.1 miles; the distance from AIT-MI and the Eastern District of Texas, Sherman Courthouse, is 1,144 miles; and Holcombe applied for and received unemployment benefits in Michigan. The Court finds such arguments unpersuasive and irrelevant.

[4] Holcombe also irrelevantly argues that AIT is headquartered in Plano, Texas.

Holcombe argues that the Eastern District of Texas can wield compulsory process over seventy percent of relevant and material witnesses since that portion of potential witnesses resides in Plano, Texas. AIT counters that the most relevant and material witnesses primarily reside in the Eastern District of Michigan and the Eastern District of Texas has no power of compulsory process over them. As the Order will discuss in Section C, "Cost of Attendance for Willing Witnesses," four of the six most relevant and material witnesses in this case allegedly reside in Plano, Texas,—well within the Court's range of compulsory process. One of the highly relevant and material witnesses—Pallante—supposedly resides in Canfield, Ohio—approximately 238 miles from the Eastern District of Michigan, Detroit Courthouse and 1,195 miles from the Eastern District of Texas, Sherman Courthouse (Dkt. #3 at p. 8). *See infra* "The Most Relevant and Material Witnesses." Only one highly relevant and material witness—Geiser—purportedly resides in the Eastern District of Michigan. *See infra* "The Most Relevant and Material Witnesses." In turn, the Court can exercise compulsory process over four of the six highly relevant and material witnesses. Conversely, the Eastern District of Michigan can exercise compulsory process over only one of the six highly relevant and material witnesses as identified by the Court. Thus, this factor weighs against transfer.

## C. Cost of Attendance for Willing Witnesses

The Court must decide if transfer would benefit the costs of attendance for willing witnesses. In *Volkswagen II*, the Fifth Circuit noted that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time in which these fact witnesses must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than

100 miles, the factor of convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. "The convenience of witnesses is probably the single most important factor in transfer analysis." *In re Genentech, Inc.*, 556 F.3d 1338, 1342 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y 2006). "[T]he convenience of one key witness may outweigh the convenience of numerous less important witnesses." *Mid-Continent Cas. Co. v. Petrol. Sols., Inc.*, 629 F. Supp. 2d 759, 763 (S.D. Tex. 2009). Finally, "among party and non-party key-witnesses, a court should give greater weight to the availability and convenience of non-party, key witnesses." *Id.*

AIT argues that most of the relevant and material witnesses in Holcombe's original and amended complaints (the "complaints") (Dkt. #1; Dkt. #14) reside in the Eastern District of Michigan and the distance between the Eastern District of Michigan and the Eastern District of Texas is 1,100 miles. AIT points out that many AIT-MI witnesses reside within fifty miles of the Eastern District of Michigan, Detroit Courthouse. AIT makes no mention in its briefing of whether these are willing witnesses. AIT further argues that "many non-party witnesses," who are relevant and material to this case, work and reside in or near Michigan (Dkt. #9 at p. 2). Holcombe counters that thirteen Plano-based witnesses are just as close to the Eastern District of Texas, Sherman Courthouse. Holcombe more helpfully notes that traveling to and lodging in the Eastern District of Texas is more economical than in the Eastern District of Michigan for two allegedly willing witnesses—David Schauer, residing in El Paso, Texas, and Holcombe himself, residing in Prairie View, Illinois. Unfortunately, neither Holcombe nor AIT designates a single, non-party witness to aid the Court in this section of the analysis.

When considering witnesses in this factor of the transfer of venue analysis, "[a] district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 556 F.3d at 1343. Thus, the Court asks (1) what witnesses are most relevant and material to hearing this dispute and (2) where those witnesses reside.

### i. The Most Relevant and Material Witnesses

Holcombe's complaints are based on the decision to fire him and whether age discrimination drove that decision. Holcombe alleges that AIT has centralized planning and human resources operations at its headquarters in Plano, Texas. Holcombe further alleges that these planning and human resources operations dictate policy across all of AIT's divisions worldwide, including AIT-MI.

The pleaded facts and affidavits support this claim. After all, Chalupa—AIT's CEO—allegedly recruited Holcombe. Wellham—AIT's Vice President of Automation and Tooling—allegedly shared the employee termination list of thirty-two employees with AIT-MI personnel and said that he wanted to begin layoffs when he got to AIT-MI. Wellham also avowedly asked about the ages of the employees in the list to avoid "an age discrimination problem." (Dkt. #1 at p. 4). Moreover, Wellham supposedly emailed the "draft 'Final Org Structure'" to Pallante, Geiser, and Moreno, explaining that Holcombe was no longer responsible for Human Resources (Dkt. #14 at p. 4). Holcombe also claims that he reported directly to Wellham before the reorganization. Moreno purportedly sent an AIT-MI employee letter from AIT's Chief Operating Officer Karl Williams ("Williams") to Holcombe, announcing LaGranduer as President reporting to Wellham. That letter also explained, "[w]e appreciate each individual's contribution and value to AIT, and look forward to an exciting future." (Dkt. #14 at p. 3). Moreno allegedly asked Holcombe to issue the letter to all of AIT-MI's employees and Holcombe did so the same

8

day. Holcombe also claims that Moreno received a copy of the "draft 'Final Org Structure'" from Wellham (Dkt. #14 at p. 4). Finally, Holcombe asserts that the AIT-MI letter was from Williams (Dkt. #14 at p. 3).

This supports Holcombe's claim that a central management and personnel structure based at AIT in Plano, Texas, governed AIT and AIT-MI. After all, AIT's Senior Executives—Chalupa, Moreno, Wellham, and Williams—were allegedly involved in AIT-MI's management and personnel policy, including Holcombe's recruitment, the termination of AIT-MI employees, and AIT-MI's corporate organization.

Holcombe's complaints also suggest that Pallante and Geiser played significant roles in the events leading to his termination. Wellham allegedly emailed the "draft 'Final Org Structure'" to Pallante on April 5, 2016, "showing HR had been taken away from Holcombe's [professional responsibilities]." (Dkt. #14 at p. 4). On May 16, 2016, Pallante supposedly became Vice President and General Manager of AIT-MI, reporting directly to Wellham. Holcombe avers that Pallante began to reduce his job responsibilities in June 2016 (Dkt. #14 at p. 5). First, Pallante purportedly disregarded Holcombe's opinions about candidates when hiring for a controller position that was technically "still under Holcombe on the org chart." (Dkt. #14 at p. 5). Pallante then avowedly hired a contractor for the position—Steinmetz—who technically reported to Holcombe but was, in fact, directly managed by Pallante. In July 2016, Pallante supposedly "reviewed and revised Holcombe's job description." (Dkt. #14 at p. 6). Around that time Pallante purportedly told Holcome that "he was taking over Security"—one of Holcombe's existing job responsibilities (Dkt. #14 at p. 6). Pallante also allegedly told Holcombe to "delegate invoicing and other lower-level activities" and focus on "higher-level activities" but Pallante never defined a "higher-level activity" for Holcombe (Dkt. #14 at p. 6). Thereafter, Holcombe claims that

Pallante was "taking away Holcombe's job from under Holcombe's eyes." (Dkt. #14 at p. 6). Additionally, Geiser allegedly received the first employee termination list of thirty-two employees from Wellham (Dkt. #14 at p. 3). Geiser also supposedly emailed a list of thirty-three employees to terminate to Wellham, LaGrandeur, Holcombe, and Keller (Dkt. #14 at p. 3). Later that day, Wellham asked Geiser and others about the ages of the employees on the original termination list in order to avoid "an age discrimination problem." (Dkt. #14 at p. 4). Like Pallante, Geiser purportedly received Wellham's "draft 'Final Org Structure.'" (Dkt. #14 at p. 4). Finally, Geiser and Pallante met with Holcombe to tell him that AIT had eliminated his job and he was being terminated (Dkt. #14 at p. 4). Thus, Pallante and Geiser along with the aforementioned AIT officers—appear to be a highly relevant and material witness.

Holcombe's complaints certainly mention several AIT-MI employees primarily residing in the Eastern District of Michigan. LaGrandeur allegedly received the termination list of thirty-three employees from Geiser. Paul Schoenherr and Lisa Schoenherr purportedly attended a meeting where Pallante insulted Steinmetz's and Holcombe's ages. Such claims, however, do not suggest that these parties were instrumental in the decision and effort to fire Holcombe based on his age. Thus, none of these witnesses appear to be highly relevant or material to this case.

The aforementioned AIT officers, Pallante, and Geiser allegedly made and directly executed the decision to fire Holcombe. Thus, the Court finds that the dispute's most relevant and material witnesses are AIT's CEO Chalupa, AIT's Vice President of HR Moreno, AIT's Chief Operating Officer Williams, AIT's Vice President of Automation and Tooling Wellham, AIT-MI's Vice President and General Manager Pallante, and AIT-MI's Human Resources Director Geiser (the "Critical Witnesses").

### ii. Where the Critical Witnesses Reside

Holcombe alleges that all but two of the Critical Witnesses reside in Plano, Texas, (Dkt. #8, Exhibit 2 at pp. 4–6). Pallante, on the other hand, purportedly resides in Canfield, Ohio (Dkt. #8, Exhibit 2 at p. 5). Geiser supposedly resides in Washington, Michigan, "which is in the Detroit metropolitan area." (Dkt. #8, Exhibit 2 at p. 4; Dkt. #3, Exhibit 1 at p. 3). AIT did not contest these allegations (Dkt. #3, Exhibit 1). Thus, the Critical Witnesses, barring Pallante and Geiser, appear to reside in the Eastern District of Texas.

### iii. The Eastern District of Michigan, Detroit Courthouse Is Not "Clearly More Convenient" for the Critical Witnesses and for the Willing Witnesses

Due to the parties' unfocused briefing, the Court is aware of only two, allegedly willing witnesses—Schauer and Holcombe. Holcombe claims that the Eastern District of Texas is more convenient for these two, willing witnesses as travel to and lodging in this District are more economical for them. Moreover, since all but two of the Critical Witnesses allegedly reside in Plano, Texas, the Eastern District of Texas, Sherman Courthouse, is a more convenient venue for the majority of the Critical Witnesses than the Eastern District of Michigan, Detroit Courthouse. Furthermore, whether the Critical Witnesses prove willing or unwilling to appear, the Court can readily wield compulsory process over all but two of them. *See supra* Section B: "The Availability of Compulsory Process." Thus, this factor weighs against transfer.

### D. All Other Practical Problems

The Court now considers whether any other practical problems affect the transfer analysis. "[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a 1404(a) motion to transfer. Were it, delay would militate against transfer in every case." *In re Radmax*, 720 F.3d 285, 289 (5th Cir. 2013). Further, "the convenience of counsel is

not a factor to be assessed in determining whether to transfer a case under 1404(a)." *Volkswagen I*, 371 F.3d at 206.

AIT argues that no practical problems impede litigating this case in the Eastern District of Michigan. AIT submits that Holcombe only filed his case on July 27, 2017, and no proceedings have been conducted to date. AIT further contends that it promptly filed its motion to transfer. AIT finally avers that Holcombe's burden to retain local counsel does not subvert transfer of venue. Holcombe counters that the case is under way in the Eastern District of Texas and the Court has already issued an Order Governing Proceedings. Holcombe further asserts that transfer would delay this case for several months as he would have to find a new lawyer to practice in the Eastern District of Michigan. There is no substantial evidence that transferring venue would unduly burden either party. Thus, this factor is neutral in the transfer of venue analysis.

## II. Public Interest Factors

### A. The Administrative Difficulties Flowing from Court Congestion

The Court now asks whether administrative difficulties flowing from court congestion affect the transfer analysis. AIT argues that transferring the case would alleviate congestion in the Eastern District of Texas. AIT submits that for the twelve-month period ending on June 30, 2017, the Eastern District of Texas had "eight judges who each had 864 weighted filings." (Dkt. #3 at p. 9). On the other hand, the Eastern District of Michigan had fifteen judges with each having 342 weighted filings (Dkt. #3 at p. 9). Thus, AIT contends that this case should proceed just as expediently in the Eastern District of Michigan. Holcombe concedes that this factor is neutral.

The most recent statistics obtained by the Court for the twelve-month period ending on September 30, 2017, indicate that the median time from filing to trial in civil cases in the Eastern

12

District of Texas was 23.8 months, as compared to 25.9 months in the Eastern District of Michigan.[5] The median time from filing to disposition in the Eastern District of Texas was 6.9 months and 9.8 months in the Eastern District of Michigan. Thus, this factor is neutral as the case resolution speeds of both the Eastern District of Michigan and the Eastern District of Texas are similar.

**B. The Local Interests in Having Localized Interests Decided at Home**

The Court next asks whether local interests affect the transfer analysis. AIT argues that the citizens in the Eastern District of Michigan, where Holcombe worked, have a strong interest in correcting alleged age discrimination in the workplace. AIT further contends that the Court "should look to where the injury occurred and in age discrimination cases, the injury typically occurs in the district where the plaintiff was discharged." (Dkt. #3 at p. 10). Holcombe counters that the evidence "points to Corporate [sic] involvement in Plano, Texas." (Dkt. #8 at p. 12).

The Court is of the opinion that the Eastern District of Texas has a strong interest in presiding over this controversy because AIT is located in the District, all but two of the Critical Witnesses allegedly reside in the District, and AIT's central management allegedly made the decision to fire Holcombe in the District. Finally, Holcombe resided in Texas during his tenure at AIT-MI, maintaining a home in Texas, holding a Texas driver's license, and even voting in Texas. Therefore, the Court finds that this factor weighs against transfer.

**C. Familiarity of the Forum with the Governing Law**

The Court considers whether the familiarity of the forum with this matter's governing law affects the transfer analysis. This case concerns the application of federal employment law. Neither party suggests, nor is the Court aware of, any reason why the Eastern District of Texas or

---

[5] *See* Federal Court Management Statistics, September 2017,
www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2017/09/30-1, accessed February 2, 2018.

the Eastern District of Michigan will be more familiar with this area of law.  As such, this factor is neutral.

### D. The Avoidance of Unnecessary Problems of Conflicts of Law

The Court finally asks whether the avoidance of unnecessary problems of conflicts of law affects the transfer analysis.  AIT argues that there is no issue with respect to conflicts of law or the application of foreign laws.  Holcombe counters that AIT made him sign a Non-Competition and Non-Disclosure Agreement that stated, "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Texas without regard to principles of conflicts of law." (Dkt. #8 at pp. 12–13).  Holcombe argues that since the non-compete agreement impacts his ability to find new employment, the presiding court will have to construe Texas law and not Michigan law.  Both the Eastern District of Texas and the Eastern District of Michigan are equally capable of applying Texas law.  Thus, this factor is neutral.

## CONCLUSION

Transfer would be inconvenient for most of the Critical Witnesses, as all but two allegedly reside in the Eastern District of Texas.  The management decisions giving rise to the lawsuit also allegedly occurred in the Eastern District of Texas.  Finally, the Eastern District of Texas has a compelling interest in hearing cases involving age discrimination at a large company headquartered within it.

After considering the above factors, the Court is of the opinion that Defendant has not shown "good cause" that transfer to the Eastern District of Michigan is "clearly more convenient" than the current venue.  *Volkswagen II*, 545 F.3d at 315.

It is therefore **ORDERED** that Defendant's Motion to Transfer Venue (Dkt. #3) is hereby **DENIED**.

**SIGNED this 6th day of March, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE